[Crim. No. 1844. In Bank.—May 29, 1914.]

THE PEOPLE, Respondent, v. LOUIS ANDREW LARSON, Appellant.

CRIMINAL LAW—MURDER IN FIRST DEGREE—EVIDENCE SUSTAINS CONVICTION.—In a prosecution of a man for the murder of his wife, the evidence, although entirely circumstantial, is held sufficient to sustain, beyond all reasonable doubt, the conclusion reached by the jury that the defendant was guilty of murder in the first degree.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

Walter C. Fisher, and Sturgess Q. Adams, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

ANGELLOTTI, J.—The defendant was duly informed against for the murder of his wife, and upon trial by jury was convicted of murder in the first degree. Judgment of death was pronounced. We have here an appeal by defendant from such judgment and from an order denying his motion for a new trial.

It is seldom that we find an appeal so utterly destitute of merit as the one before us.

The claim that the evidence is legally insufficient to support the verdict is entirely without foundation. While it is true that no living person saw the actual killing of deceased other than the perpetrator of the homicide, and that the evidence was entirely circumstantial, it is idle to assert that there was not enough in the evidence to warrant the conclusion beyond all reasonable doubt on the part of the jurors that the defendant was guilty as charged.

Mrs. Larson was found unconscious and dying in the hills above Casa Verdugo, a short distance from Glendale, on the afternoon of June 22, 1913, by a man and a woman who were taking a walk, and who were attracted by groans to the place where the body was, it having been moved aside and out of sight from the pathway. She died very shortly thereafter. She had been repeatedly struck on the head and skull by some instrument or instruments, and her death was due to concussion of the brain caused by the blows. The body was removed by the authorities to Los Angeles and was identified some days thereafter as the body of defendant's wife. The deadly wound was one that might have been caused by such a weapon as any one of certain empty beer bottles that were found at the place.

Mrs. Larson had left her home in Los Angeles about 11:45 A. M. on that day, apparently dressed only for an afternoon's outing, and without any bag or baggage of any kind. She had an appointment with her husband at the corner of Sixth and Main Streets, a point from which passage on a Glendale car could be taken, for about 12:10 P. M. Agreeably to the appointment defendant and his wife met at that time and place. Defendant claims that they separated there at 12:20 P. M., she stating that she was going to San Francisco, in accord with her intention expressed to him the preceding night, and that he never saw her again until he saw her dead body in

an undertaking establishment. Opposed to this theory is a
mass of evidence amply sufficient to warrant the jury in con-
cluding that he accompanied his wife from Sixth and Main
Streets, on a Glendale car, to a point a short distance from
Glendale, where they alighted, and that he went with her to
the place where her body was found, and there brutally killed
and left her. That she herself almost immediately after meet-
ing her husband must have gone from that point to the place
where she was killed is clear. There was the testimony of
the conductor of the Glendale car leaving the Main Street
depot at 1 P. M. that day that a man resembling defendant
was a passenger on the car, accompanied by a woman, and
that they alighted at a point near Glendale. There was the
testimony of the man and woman who found the body, that
just before finding it they met a man coming down the path-
way, the man identifying the defendant as the person, and
the woman testifying that, in her opinion, the defendant was
the man. A watch was found among defendant's possessions
when he was arrested, and the testimony was quite convincing
to the effect that it was the watch worn by Mrs. Larson when
she left her home on the day of the homicide. Defendant
gave an account that was far from satisfactory as to his where-
abouts during the afternoon of June 22d, up to about 6 P. M.,
when he met a young woman to whom he was paying some
attention. The testimony of the seventeen-year-old daughter
of the parties was to the effect that she heard defendant and
deceased plan a proposed outing on the evening or night of
June 21st for the next day; that she helped her mother dress
for the occasion and that she (Mrs. Larson) left her home
prepared only for such an outing, with only some fifteen dol-
lars in money and no baggage or clothing for a journey to
San Francisco. Defendant gave inconsistent statements as to
where he left his wife on June 22d. Defendant and his wife
had had considerable trouble, and within the few weeks imme-
diately preceding the killing had quarreled several times.
There were other circumstances in support of the verdict
which it is not necessary here to detail. Enough has been
set forth to show that there was sufficient evidence to sustain
the verdict, if the same was believed by the jury to be true.
Of course, all questions as to the credit to be given to any
witness are exclusively for the jury and the trial court, but

from a careful examination of the record we see no reason to doubt the correctness of the verdict.

There is no force in the claim of prejudicial misconduct on the part of the district attorney.

No other point is made for reversal. We have read the record carefully, and are constrained to say that it is apparent that defendant's rights were at all stages of the trial carefully protected by his counsel, and that the record is absolutely free from anything in the way of substantial error.

The judgment and order denying a new trial are affirmed.

Shaw, J., Sloss, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.